# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**JEFF CONWILL, et al.**                                                **PLAINTIFFS**

**V.**                                              **CIVIL ACTION NO.: 1:07CV116-SA-JAD**

**SHERIFF OF LOWNDES COUNTY,**
**MISSISSIPPI, in his official capacity**
**and CHAD BELL, in his individual capacity**                            **DEFENDANTS**

## MEMORANDUM OPINION

This cause is before the Court on two related motions filed by Defendants. The Court has considered the motions, responses, attachments, as well as supporting and opposing authorities. Because Defendants reincorporate the arguments made in support of their Motion to Dismiss in their Motion for Summary Judgment, the Court will consider all of the arguments before it under the summary judgment standard. Therefore, Defendants' Motion to Dismiss [10] is denied as moot, and Defendants' Motion for Summary Judgment [37] is granted in part and denied in part.

### Factual and Procedural Background

Jeff Conwill, Dawn Conwill Duckworth, and Barbara Conwill, the Plaintiffs in this case, allege Deputy Chad Bell began relentlessly harassing Jeff Conwill beginning in 2005. Jeff Conwill's only explanation for Deputy Bell's animus towards him is that Jeff refuses to become an informant for Deputy Bell. From the middle of 2005 to the end of 2006, Jeff Conwill testified that Deputy Bell pulled him over an average of two or three times a month. During April or May of 2006, Deputy Bell pulled Jeff Conwill over fifteen times in one month. Jeff Conwill testified that the first time he was pulled over, he consented to Deputy Bell searching his car. However, after Deputy Bell emptied trash bags and the ashtray into the floorboard, Jeff Conwill refused to allow future searches. Despite his refusal to consent, Deputy Bell continued to pull Jeff Conwill over and search his car

without reasonable suspicion or probable cause. These multiple traffic stops never produced any incriminating evidence against Jeff Conwill, and he was never cited for any violations.

The arbitrary stopping of the vehicle was so persistent that as of August 2005, Jeff Conwill parked his Trans Am and started driving his mother's car, a blue Corsica, in an attempt to avoid Deputy Bell's harassment. Jeff Conwill testified that as soon as Deputy Bell discovered he was driving the Corsica, the harassment and searches resumed. Towards the end of this harassment period, Jeff Conwill would call either his mother, Barbara Conwill, or his sister, Dawn Conwill Duckworth, when he was pulled over by Deputy Bell and allow them to listen in on Bell's conversation as he searched Jeff Conwill's car. According to Plaintiff Barbara Conwill, Jeff Conwill called her at least six times while he was being stopped and harassed by Deputy Bell. On another occasion, Deputy Bell set up a road block in front of Dawn Conwill Duckworth and Barbara Conwill's house in order to pull Jeff Conwill over when he left their house. Barbara Conwill stated that as soon as the officers pulled Jeff Conwill over, the roadblock disappeared.

The last time Jeff Conwill encountered Deputy Bell was on January 9, 2007, when he was riding in his sister's van. According to Jeff Conwill and Dawn Conwill Duckworth, Deputy Bell pulled them over because Jeff did not have on his seatbelt. Although Dawn was driving the van, Deputy Bell walked over to the passenger side of the van to where Jeff was sitting. Deputy Bell allegedly began screaming and ordered Jeff to get out of the van. Jeff refused to exit the vehicle. Deputy Bell responded that if Jeff did not get out of the van and allow him to search the van, he would get a drug dog. Jeff still refused. Jeff Conwill and Dawn Conwill Duckworth remained on the side of the road for forty minutes waiting for the drug dog to arrive. Finally, after a drug dog never arrived, Deputy Bell issued Dawn Conwill Duckworth a citation for Jeff not wearing a seatbelt

2

and allowed them to go. During the majority of this stop, Jeff was on the phone with Barbara Conwill. Dawn tried to call Sheriff Butch Howard while they were waiting for the drug dog, but Sheriff Howard would not accept the phone call. This incident was the only time Dawn Conwill Duckworth was pulled over by Deputy Bell.

Jeff Conwill has changed cars regularly and moved to Caledonia, Mississippi, to avoid Deputy Bell. Jeff Conwill testified that he is paranoid everywhere he goes due to the constant harassment. Barbara Conwill has not been pulled over by Deputy Bell but states that she has been followed by him when she drove her Corsica. Plaintiffs contend that Deputy Bell's conduct constitutes arbitrary government action, violating the due process clause of the Fourteenth Amendment. Further, Deputy Bell's actions constitute an unreasonable seizure, violating Plaintiffs' Fourth Amendment rights.

Defendants now move this Court for summary judgment arguing that the Plaintiffs' 42 U.S.C. § 1983 Fourth and Fourteenth Amendment claims are all barred by the doctrine of qualified immunity.

**Standard of Review**

Summary Judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); see also Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 343 (5th Cir. 2007). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

3

In determining whether there exists a genuine dispute as to any material fact, the court must consider all of the evidence in the record but refrain from making any credibility determinations or weighing the evidence. Turner, 476 F.3d at 343 (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)). The court makes all reasonable inferences in favor of the non-moving party, Reeves, 530 U.S. at 150, 120 S. Ct. 2097; "however, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Turner, 476 F. 3d at 343.

In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., et al., 37 F.3d 1069, 1075 (5th Cir. 1994). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." Reeves, 530 U.S. at 150, 120 S. Ct. 2097.

**Discussion**

Defendants argue that the Plaintiffs' 42 U.S.C. § 1983 claims are all barred by the doctrine of qualified immunity. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.

42 U.S.C. § 1983. Claims made under Section 1983 for damages against government officials like police officers almost always raise issues concerning the availability of qualified immunity.

4

I.  Deputy Sheriff Chad Bell, Individual Capacity

Public officials, including law enforcement officers such as the individual Defendant Chad Bell, are entitled to assert the defense of qualified immunity in a Section 1983 suit for discretionary acts occurring in the course of their official duties. Harlow v. Fitzgerald, 457 U.S. 800, 806, 102 S. Ct. 2727, 73 L. Ed. 2d 396, 403 (1982); Gagne v. City of Galveston, 805 F.2d 558, 559 (5th Cir. 1986). These public officials are shielded from civil damage liability for those actions as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Davis v. Scherer, 468 U.S. 183, 194, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984); Harlow, 457 U.S. at 818, 102 S Ct. 2727; White v. Walker, 950 F.2d 972, 975 (5th Cir. 1991); Morales v. Haynes, 890 F.2d 708, 710 (5th Cir. 1989). Stated differently, qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986).

The first step in the inquiry of the defendant's claim of qualified immunity is whether the plaintiff has alleged the violation of a clearly established constitutional right. Siegert v. Gilley, 500 U.S. 226, 231-32, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991). This inquiry questions whether the official acted reasonably under settled law in the circumstances with which he was confronted. Hunter v. Bryant, 502 U.S. 224, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991). "If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." Blackwell v. Barton, 34 F.3d 298, 303 (5th Cir. 1994)(quoting Pfannstiel v. City of Marion, 918 F.2d 1178, 1183 (5th Cir. 1990)). Thus, even if Deputy Sheriff Bell violated the Plaintiffs' constitutional rights, he is entitled to qualified immunity if his actions were objectively reasonable. See Blackwell, 34 F.3d at 303.

5

The issue is an "objective (albeit fact-specific) question whether a reasonable officer could have believed" that he was violating the plaintiffs' constitutionally protected rights "under the circumstances of the complained action." Mangieri v. Clifton, 29 F.3d 1012, 1017 (5th Cir. 1994) (quoting Pfannstiel, 918 F.2d at 1183); see Hale v. Townley, 45 F.3d 914, 918 (5th Cir. 1995) ("Factual allegations are examined to determine whether they would be sufficient, if proven, to establish a clearly established law."). Thus, in accordance with the mandate in Siegert, this Court must examine Plaintiffs' claims, taken as true, to ascertain whether they are sufficient to allege the existence of violations of their clearly established rights. If constitutional violations are alleged, the court then addresses the objective reasonableness of Deputy Sheriff Bell's actions in light of clearly established law, i.e., whether Bell is entitled to qualified immunity.

A.  Fourth Amendment

The first step in the inquiry of the defendant's claim of qualified immunity is whether the plaintiff has alleged the violation of a clearly established constitutional right. Siegert, 500 U.S. at 231-232, 111 S. Ct. 1789. The Plaintiffs allege that their Fourth Amendment rights were violated by repeated traffic stops by Deputy Bell conducted for the purpose of harassment. The Fourth Amendment protects individuals from unreasonable searches and seizures. Traffic stops are considered seizures within the meaning of the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 653, 99 S. Ct 1391, 59 L. Ed. 2d 660 (1979). Because traffic stops are considered more similar to investigative detentions than formal arrest, we analyze the legality of traffic stops for Fourth Amendment purposes under the standard articulated in Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). See Berkemer v. McCarty, 468 U.S. 420, 439, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984). This standard is a two-tiered reasonable suspicion inquiry: 1) whether the officer's

6

action was justified at its inception, and 2) whether the search or seizure was reasonably related in scope to the circumstances that justified the stop in the first place. Terry, 392 U.S. at 19-20, 88 S. Ct. 1868; United States v. Dortch, 199 F.3d 193, 198 (5th Cir. 1999); United States v. Shabazz, 993 F.2d 431, 435 (5th Cir. 1993).

"The investigation methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." Florida v. Royer, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983). Once an officer's suspicions have been verified or dispelled, the detention must end unless there is additional articulable, reasonable suspicion. "At that point, continuation of detention is no longer supported by the facts that justified its initiation." Shabazz, 993 F.2d at 436. Reasonable suspicion exists when the detaining officer "can 'point to specific articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the search and seizure].'" United States v. Santiago, 310 F.3d 336, 340 (5th Cir. 2002) (citing United States v. Thomas, 12 F.3d 1350, 1366 (5th Cir. 1994)).

1. Traffic Stop: January 9, 2007

As to the traffic stop involving Jeff Conwill and Dawn Conwill Duckworth, Plaintiffs do not contest the first prong of the Terry-stop inquiry, that the stop was justified at its inception. Deputy Bell observed that Jeff Conwill did not have on his seatbelt which constitutes a violation of Mississippi Code Annotated Section 63-2-7. Plaintiffs, however, contend that Deputy Bell exceeded the scope of the traffic stop and violated Jeff Conwill and Dawn Conwill Duckworth's constitutional rights by continuing to detain them for a period of forty minutes (Deputy Bell alleges the detention lasted only fifteen minutes). Plaintiffs contend that their continued detention required separate justification because it extended beyond the scope of the original reason for the stop, the traffic

violation. Plaintiffs' objection challenges the second prong of the Terry analysis, "whether the officer's action was reasonably related in scope to the circumstances which justified the interference in the first place." Shabazz, 933 F.2d at 431. When the purposes of the stop are resolved, and the officer's initial suspicions have been verified or dispelled, the detention must end unless there is additional reasonable suspicion supported by articulable facts. United States v. Gonzalez, 328 F.3d 755, 758 (5th Cir. 2003).

When making a reasonable-suspicion determination, the Court must look at the "totality of the circumstances" to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. United States v. Arivizu, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002) (citing United States v. Cortez, 449 U.S. 411, 417, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981)). This allows officers to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" Arvizu, 534 U.S. at 273, 122 S. Ct. 744. Defendants' Brief states that immediately upon arriving at the vehicle, the officers[1] noticed that Jeff Conwill was sweating, shaking, nervous, and averting eye contact. Based on their observations, the officers developed a suspicion that illegal activity, i.e., drug use/possession, might be taking place in the automobile.

The Plaintiffs rely on United States v. Dortch for the proposition that they were detained beyond the reasonable time frame for the traffic stop to occur. 199 F.3d 193 (5th Cir. 1999). In Dortch, the Fifth Circuit rejected the idea that nervousness can be the basis for reasonable suspicion of drug trafficking. Id. at 199. The court held that the defendants' Fourth Amendment rights had been violated when the detention extended beyond the completion of the computer check because,

---

[1] Deputy Sheriff Jeff Harris was also present during the vehicle stop.

at that point, the basis for the initial stop had been discharged. Id. at 198. Further, the Court found no reasonable suspicion of drug trafficking despite the confusion as to the relationship of the defendant to the proper renter of the vehicle, the defendant's absence as an authorized driver on the rental agreement, the allegedly inconsistent answer about the defendant's stay in Houston, and the supposed nervousness of the defendant. Id.

Here, compared to the facts in Dortch, Deputy Bell's bases for reasonable suspicion in this case are even less suggestive of reasonable suspicion and are at best trivial. Also, the facts of this traffic stop are weak compared to the facts of other relevant Fifth Circuit precedent. For example, in United States v. Jones, there was no reasonable suspicion for continued detention even though one of the occupants had a previous arrest on a crack cocaine charge. 234 F.3d 234, 242 (5th Cir. 2000). Likewise, in United States v. Santiago, the court found no reasonable suspicion for continued detention even though the defendant lied to the officer about the identity of the passenger, and the driver exhibited extreme nervousness, including shaking hands. 310 F.3d at 338. Because the totality of the circumstances are not such to create a reasonable suspicion that Plaintiffs were involved in criminal activity, Deputy Bell could not hold Plaintiffs beyond the time of the initial investigation, the seatbelt violation. More importantly, Defendants do not present adequate evidence of a nexus between Jeff Conwill's allegedly suspicious behavior and any specific criminal activity. Deputy Bell has not articulated any connection between the allegedly nervous behavior and drug possession.

Moreover, it seems that the decision to detain Plaintiffs and to call the canine unit was based on Jeff Conwill's refusal to consent to a search of the vehicle. Jeff Conwill testified that Deputy Bell threatened to retrieve a drug dog if Conwill did not allow him to search the vehicle. The police

9

cannot base their decision to prolong a traffic stop on the detainee's refusal to consent to a search. United States v. Williams, 271 F.3d 1262, 1271 (10th Cir. 2001) (holding that the officer could choose to detain plaintiff after he refused to consent to a search of his car "if the officer already had sufficient reasonable suspicion to detain [the plaintiffs] for the purpose of the canine drug search."). In this case, as already discussed, Deputy Bell had not observed facts sufficient to raise a reasonable suspicion when he asked for consent. Therefore, Deputy Bell could not consider Jeff Conwill's refusal to consent in making his decision to detain Plaintiffs. Because the detention of Plaintiffs beyond the time of the initial investigation was not supported by reasonable suspicion, the detention exceeded the permissible scope of the investigatory stop.

After reviewing the facts in a light most favorable to the Plaintiffs, the Court concludes that Plaintiffs Jeff Conwill and Dawn Conwill Duckworth have alleged the violation of a clearly established constitutional right, i.e., the Fourth Amendment right to be free of unreasonable seizures. Furthermore, after reviewing the facts in the same light, the Court concludes that Deputy Bell's detention of Plaintiffs for forty minutes without reasonable, articulable suspicion that the Plaintiffs were engaged in criminal activity was not objectively reasonable. Because the record demonstrates unresolved disputes of relevant fact, Defendants' motion for summary judgment based on qualified immunity is denied as to the January 9, 2007, traffic stop involving Jeff Conwill and Dawn Duckworth.

Here, Plaintiff Barbara Conwill was not a party to the traffic stop, either as a driver or as a passenger in the vehicle. Nor was she ever "searched" or "seized" by Deputy Bell within the Fourth Amendment context at any time. Thus, Barbara Conwill has not alleged a Fourth Amendment violation and Defendants are entitled to summary judgment as to her Fourth Amendment claims.

2. Other Traffic Stops

Plaintiff Jeff Conwill alleges that beginning in May 2005 he was subjected to multiple illegal traffic stops and car searches by Deputy Bell. Further, he contends that in April or May of 2006, Deputy Bell pulled him over fifteen times in one month. According to Jeff Conwill, all of these stops and searches were without reasonable suspicion or probable cause and violated his Fourth Amendment rights. Further, Jeff Conwill testified that Deputy Bell searched his vehicle despite his refusal to consent. Moreover, these searches never produced incriminating evidence against Jeff Conwill or even resulted in a citation.

The right to be free from illegal searches and seizures is a clearly established constitutional right. See Sorenson v. Ferrie, 134 F.3d 325, 328 (5th Cir. 1998). It is well-established that warrantless searches and seizures are unreasonable absent probable cause and exigent circumstances. See Payton v. New York, 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980). There is no evidence that the alleged multiple stops by Deputy Bell were justified. Deputy Bell testified that these incidents never occurred. Besides the traffic stop discussed in detail above, Deputy Bell denies ever pulling Jeff Conwill over. However, the testimony of the Plaintiffs creates a fact question that precludes summary judgment by the Court.

B.     Fourteenth Amendment Substantive Due Process

Plaintiffs argue that Deputy Bell's conduct constitutes arbitrary action violating the substantive due process clause of the Fourteenth Amendment. However, in Graham v. Connor, the United States Supreme Court explained that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for

analyzing these claims." 490 U.S. 386, 108 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). Stated differently, if a plaintiff's rights are protected by a specific provision, the substantive due process claim will fail. A plaintiff must bring a claim under a specific constitutional provision, if available, not under a general due process standard.

Plaintiffs allege the multiple traffic stops, unsupported by reasonable suspicion or probable cause, conducted by Deputy Bell violated their Fourteenth Amendment substantive due process rights. Because the Fourth Amendment specifically protects the Plaintiffs from unreasonable searches and seizures, the Court will grant the Defendants' Motion for Summary Judgment on Plaintiffs' substantive due process claim.

C. Fifth Amendment

In their response to the Defendants' Motion for Summary Judgment, Plaintiffs argue for the first time that Deputy Bell's actions constitute a "taking" in violation of the Fifth Amendment to the Constitution. By harassing Jeff Conwill to the point he could no longer drive his car or live in his house, Deputy Bell deprived him of his property. Further, Plaintiffs contend that Deputy Bell similarly has violated Barbara Conwill's Fifth Amendment rights by depriving her of the use of her automobile. The original Complaint did not plead a Fifth Amendment violation and the Plaintiffs never properly amended their Complaint to include this claim. Pursuant to the Federal Rules of Civil Procedure, Plaintiffs bear the responsibility of setting forth a short and plain statement of the claims showing that they are entitled to relief. FED. R. CIV. P. 8(a)(2). This is not a weighty burden requiring detailed factual allegations. Because a response to summary judgment is not the proper mechanism for raising new claims, the Court will not address this issue.

II.	Sheriff of Lowndes County, Butch Howard, Official Capacity

Sheriff Howard is sued in his official capacity only. Suits against governmental officers or employees in their official capacity are, in reality, suits against the entity that the officer or employee represents. See Monell v. Dept. of Soc. Serv., 436 U.S. 658, 690 n. 55, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) (official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."); Kentucky v. Graham, 473 U.S. 159, 167, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) ("a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.") Therefore, the Plaintiffs' claims against Sheriff Howard in his official capacity are claims against Lowndes County.

Under 42 U.S.C. Section 1983, the United States Supreme Court has held that the liability of a government entity, based on the actions of its officials, "exists only where it can be shown that the officials acted in accordance with an official government policy or firmly entrenched custom." Monell, 436 U.S. at 694, 98 S. Ct. 2018. A government entity cannot be liable under Section 1983 pursuant to the theory of respondeat superior liability alone. City of St. Louis v. Praprotnik, 485 U.S. 112, 122, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988). Nor can it be held liable pursuant to Section 1983 solely because it employs a tortfeasor. Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 215 (5th Cir. 1998); Monell, 436 U.S. at 691, 98 S. Ct. 2018. Thus, to hold Lowndes County liable under Section 1983 for the actions of its officials, Plaintiffs must prove their injuries were proximately caused by either: (1) an official policy of the county, (2) the edicts and acts of a final policymaker, which can fairly be said to represent official policy, or (3) the widespread practice of the county that is so permanent and well settled as to constitute a "custom" or written law. Monell, 436 U.S. at 694, 98 S. Ct. 2018; see also Praprotnik, 485 U.S. at 127, 108 S. Ct. 915.

In the Fifth Circuit, "[p]roof of government entity liability sufficient to satisfy Monell requires: (1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy (or custom)." Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir. 2002). "[A] plaintiff must . . . demonstrate a direct causal link between the [government entity's action] and the deprivation of federal rights." Bd. of County Comm'r v. Brown, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). In Pineda, the Fifth Circuit stated that to prove liability of a government entity "in the absence of a 'smoking gun,'"there are two paths of proof:

> 1. A policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

Pineda, 291 F.3d at 329 (citing Piotrowski, 237 F. 3d at 581). Therefore, for the Plaintiffs to prevail on their Monell claims, they must prove their constitutional rights were violated by a county employee's conduct, and that the conduct occurred because of: (1) an official policy statement, ordinance or regulation of Lowndes County, or (2) widespread practice or custom of Lowndes County. Id.

Jeff Conwill has presented multiple instances of harassment he endured at the hands of Deputy Bell. The persistent and widespread practice of conducting searches and seizures without probable cause by Deputy Bell over a year and a half period demonstrates Lowndes County had a

custom of permitting this objectionable conduct. Bennett v. City of Slidell, 728 F.2d 762, 767 (5th Cir. 1984). To establish municipal liability, Sheriff Howard must have had actual or constructive knowledge of this custom. Id. ( "[s]ufficient duration or frequency of abusive practices, or other evidence, must warrant a finding of knowledge on the part of the governing bodies that the objectionable conduct has become customary practice of city employees."). Jeff Conwill testified that from the middle of 2005 to the end of 2006, Deputy Bell pulled him over an average of two or three times a month. During April or May of 2006, Deputy Bell pulled Jeff Conwill over fifteen times in one month. Due to the vast number of violations over the year and a half time period, there exists a question of fact as to whether Sheriff Howard is imputed with knowledge of this illegal custom.

In addition to constructive knowledge, Sheriff Howard may have had actual knowledge of Deputy Bell's practice of conducting illegal searches and seizures. Jeff Conwill testified that he contacted Sheriff Howard as many as fifteen times to report Deputy Bell's harassment. According to Jeff Conwill, Sheriff Howard stated that he "did not want to hear it. As far as he was concerned, his officers did a good job." Although Sheriff Howard denies ever speaking with Jeff Conwill, he admitted that he could have made those statements to Jeff Conwill and forgotten. Whether Jeff Conwill contacted Sheriff Howard and the content of their conversations are disputed questions of material fact that preclude summary judgment.

Further, Sheriff Howard received complaints at a town meeting in Artesia from citizens who felt like Deputy Bell was overly aggressive in that area. According to Sheriff Howard, he did an investigation within the department and offered anybody who wanted to file a written complaint the opportunity to do so. No written complaints were filed, so the investigation was ended. There are

questions of fact as to the date of this meeting and the substance of the complaints.

Sheriff Howard also testified that he was contacted by Chris Griffith, Town Marshall of Caledonia, Mississippi, regarding a drug possession charge of Jeff Conwill. Chris Griffith requested the Sheriff help Jeff Conwill out of the ticket because Jeff worked for Chris. Sheriff Howard did not recall speaking to Chris Griffith about the alleged harassment by Deputy Bell. According to Jeff Conwill, Chris Griffith spoke to Sheriff Howard in April or May 2006, but he does not know if Chris Griffith spoke only of the possession charge or if he also discussed Deputy Bell's harassment of Jeff Conwill with the Sheriff.

Plaintiffs now must establish a causal connection between Sheriff Howard's actions and the practice of conducting searches and seizures without reasonable suspicion or probable cause. This causal connection can be established when a history of widespread abuse puts Sheriff Howard on notice of the need for improved training or supervision, and he fails to take corrective action. Sims v. Adams, 537 F.2d 829, 831 (5th Cir. 1976). As established previously, Sheriff Howard may have had actual and constructive knowledge of Deputy Bell's conduct. Moreover, after being put on notice, Sheriff Howard may have failed to take corrective or remedial action. Sheriff Howard's failure to act may have allowed Deputy Bell to commit further violations against Jeff Conwill.

Taken the evidence in the light most favorable to the Plaintiffs, genuine issues of material fact exist precluding summary judgment on municipal liability.

**Conclusion**

For the reasons stated above, the Motion for Summary Judgment [37] filed by Defendant Sheriff Butch Howard in his official capacity and Defendant Chad Bell in his individual capacity is GRANTED as to the Fourteenth Amendment claim and as to Barbara Conwill's claims and

16

DENIED as to the remaining claims. Further, Defendants' Motion to Dismiss[10] is DENIED AS MOOT.

A separate order in accordance with this opinion shall issue this the day.

SO ORDERED, this the 29th day of September 2008.

**/s/ Sharion Aycock**
**UNITED STATES DISTRICT JUDGE**